# In the United States Court of Appeals for the Fourth Circuit

CURTIS LEVAR WELLS JR.,

*Plaintiff-Appellant*,

v.

JAVIER FUENTES et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No.: 1:22-00140
The Honorable Michael Nachmanoff

APPELLANT'S REPLY TO BRIEF OF APPELLEES FUENTES, KLINE,
LUGASI, SOULES, VANAK, AND WANEK

Matthew Crist
Direct: 571-551-6859
Email: mcrist@macpllc.net
MATTHEW A. CRIST, PLLC
10432 Balls Ford Rd., Suite 300
Manassas, VA 20109
***Co-counsel for Appellant Wells***

Robert E. Barnes
Direct: 317-510-6211
Email: robertbarnes@barneslawllp.com
BARNES LAW LLP
700 S. Flower Street Suite 1000
Los Angeles, CA 90017
***Co-counsel for Appellant Wells***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES ................................................................. ii

Cases................................................................................................... ii

Statutes ............................................................................................ iii

Rules................................................................................................ iii

ARGUMENT ......................................................................................1

   I.  MR. WELLS MET HIS BURDEN TO PLEAD A CONSTITUTIONAL
      CLAIM.............................................................................................2

   II. MR. WELLS' SECOND AMENDED COMPLAINT STATES A VALID
      CAUSE OF ACTION AGAINST FUENTES. ...............................5

   III.ACPD OFFICERS. ......................................................................9

      A. Qualified Immunity is an Objective Standard. .......................10

      B. Objective Unreasonableness. ...................................................12

      C. ACPD Officers violation of the Second Amendment............16

   IV.   WANEK KNOWINGLY LIED, MISREPRESENTED, AND
      WITHHELD EVIDENCE..............................................................17

      A. Wanek and Shepherd Made Knowing Misrepresentations.....................18

      B. Wanek Cannot Rely on the General District Court's Determination of
         Probable Cause.........................................................................19

   V. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED ON
      THE STATE-LAW CLAIMS. .....................................................20

CONCLUSION .................................................................................24

RULE 32 CERTIFICATE OF COMPLIANCE...................................25

CERTIFICATE OF SERVICE............................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*, 556 U.S. 332, 335 (2009)................................................................5

*Berghuis v. Thompkins*, 560 U.S. 370 (2010) ...........................................................4

*Colorado v. Bertine*, 479 U.S. 367 (1987)...............................................................11

*Commonwealth v. Hill*, No. : CR17-1853, 2018 Va. Cir. LEXIS 111, at *21 (Cir.

    Ct. June 22, 2018) ...............................................................................................16

*Cromartie v. Billings*, 298 Va. 284 (2020)..........................................................9, 21

*Cromartie v. Billings*, 298 Va. 284, 298 (2020)........................................................5

*Cromartie v. Billings*, 298 Va. 284, 298, 837 S.E.2d 247, 254 (2020) ....................5

*Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 131, 704

    S.E.2d 365, 367 (2011)........................................................................................16

*Kolbe v. Hogan* 849 F.3d 114 (4th Cir. 2017)..........................................................16

*Moran v. Burbine*, 475 U.S. 412 (1986).....................................................................4

*Muehler v. Mena*, 544 U.S. 93, 95, 125 S. Ct. 1465, 1468 (2005)............................8

*Nazario v. Gutierrez*, Civil Action No. 2:21CV169 (RCY), 2022 U.S. Dist. LEXIS

    142044, at *2 (E.D. Va. Aug. 9, 2022) ................................................................9

*South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) ...........................................11

*South Dakota v. Opperman*, 428 U.S. 364, 369, 381 (1976).....................................10

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006)................24

*United States v. Brown*, 787 F. 2d 929 (4th Cir. 1986).......................................11

*United States v. Melendez-Garcia*, 28 F.3d 1046, 1054 (10th Cir. 1994)................4

**Statutes**

18 U.S.C. 921(a)(17)(B).........................................................................21

Va. Code § 18.2-308 ...............................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................9

# ARGUMENT

Appellees Fuentes, Kline, Lugasi, Soules, Vanak, and Wanek ("ACPD Appellees") fail to squarely meet the thrust of Mr. Wells' Brief. First, Appellant's Brief does not assert the wrong standard for the evidentiary burden of the qualified immunity test and does not set up a dispute with the February 9, 2020, Audio Recording. Second, Fuentes is not permitted to continue a facially unreasonable search and seizure merely because Armstrong initiated an unreasonable stop.

The ACPD Appellees who were present during the events of February 9, 2020,[1] primarily rely, as does the district court, upon a necessarily fallacious theory of consent to determine that the Audio Recording[2] demonstrates Mr. Wells consented to the searches and seizures – there existed no indicia of consent.[3] Similarly, signing the property retrieval form does not imply consent. The ACPD Officers proceed to an argument that taking possession of the "List" does not violate the Fourth Amendment – it is unclear what ACPD Appellees are attempting

---

[1] Appellees Fuentes, Kline, Lugasi, Soules, and Vanak.

[2] Produced as a Digital Media Volume in Volume II of the Joint Appendix. In an effort not to interfere with the Court's Joint Appendix citation system, the Digital Media Volume will be cited as "DMV" with a timestamp to accord with the time readout display within the video file.

[3] Mr. Wells merely gave up and stopped asking to have his property locked in his trunk or openly carried – there can be no reasonable argument that the audio recording demonstrates consent and the district court and the Appellees do not direct the Court to any timestamp where such consent was given.

to argue because nowhere has Mr. Wells argued a violation for the taking of such a "List" – Mr. Wells' argument has always been that no such list has ever existed and their conduct related to such fantastical List demonstrated facially unreasonable conduct. Finally, the ACPD Appellees argue there was no violation of the Second Amendment because Mr. Wells consented to such seizures and case law did not provide a clearly established right to possess firearms on public streets. However, the ACPD Appellees' argument on the Second Amendment fails to address the facts that Mr. Wells did not consent and the law at the time did not prohibit open carry at the time – no case law is needed because the statute was clear and one Appellee admitted as much in his testimony.

## I. MR. WELLS MET HIS BURDEN TO PLEAD A CONSTITUTIONAL CLAIM.

The district court's June 2, 2023, Order short circuits the two-pronged analysis that the ACPD Appellees believe Mr. Wells failed to heed. On the contrary, Mr. Wells' Brief highlighted the insufficient analysis of the district court's Order. The ACPD Appellees' Brief asserted that Mr. Wells' Brief is in error on which party bears the burden on the second prong of the analysis – the Appellant's Brief does not make that error. Appellant's Br. at 22-25.

The ACPD Appellees proceeded to inaccurately assert that Mr. Wells attempted to create a factual dispute by claiming he would testify otherwise than what the recording and other documents state – the absence of citation to Mr.

Wells' Brief speaks volumes.[4]  App. DKT 40 at 16.  Mr. Wells never made such an argument.  Rather, the district court's Opinion and the Appellees find consent where none existed and where no evidence thereof exists.  The four-part conclusion of the district court fundamentally breaks down to:  (1) Armstrong's investigative stop was reasonable, therefore the ACPD Officers' continuation was reasonable, (2) inventory-search exception to the Fourth Amendment, (3) Mr. Wells consented to all searches and seizures, and (4) Mr. Wells also consented to the firearms being seized.  This analysis from the district court fails to address the vast bulk of the pleadings in the Second Amended Complaint and, therefore, is insufficient and must be reversed.

Mr. Wells does not attempt to contradict the recording – he expressly relies upon the evidence found therein demonstrating Mr. Wells did not consent and, necessarily, the complete absence of any evidence of consent.  Appellant's Br. at 31, *inter alia*.  When a constitutional right is waived, there must be an exceptionally clear indication of such waiver.  For example, the waiver of one's

_____

[4] ACPD Appellees' Brief at page 16 falsely claims Mr. Wells attempted to create a factual dispute between his prospective testimony, should this case be permitted to proceed to discovery, and the audio recording produced to the Court in Joint Appendix II.  Mr. Wells did not attempt to create such a dispute.  The recording clearly demonstrates Mr. Wells merely giving up and not resisting the officers further – such giving up by exhaustion **must not** be countenanced by this Court as a method of finding consent and waiver of fundamental constitutional rights.

*Miranda* rights requires more than a person simply talking. *See generally, Moran v. Burbine*, 475 U.S. 412 (1986), *and Berghuis v. Thompkins*, 560 U.S. 370 (2010). There must be some education on the point of what the Fifth Amendment protects and what the criminal suspect is doing by answering police questions.

Assuming *arguendo* that Mr. Wells consented, despite the lack of evidence of consent, the illegality of Armstrong's seizure and the ACPD Officers' seizure and search tainted such assumed implied consent.

> The Supreme Court has provided three factors that are especially relevant to determining whether a consent is tainted by a preceding illegal search or seizure: 1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct.

*United States v. Melendez-Garcia*, 28 F.3d 1046, 1054 (10th Cir. 1994). The district court concluded disputed facts in the movant's favor to determine Mr. Wells consented; however, Mr. Wells had his hands cuffed behind his back, outside in the early-evening of February 9, 2020, sitting on a curb, with snot hanging down his face – the Appellees, and the district court, concluded that his **merely giving up** can be construed as consent and therefore waiver of one of the most important constitutional rights and consent to the searches and seizures of his property. This Court must reverse the unreasonable conclusion that merely giving up in the face of such overwhelming and unreasonable force implies consent.

4

## II. MR. WELLS' SECOND AMENDED COMPLAINT STATES A VALID CAUSE OF ACTION AGAINST FUENTES.

The district court's Order permits an officer to continue an unreasonable search based upon no information provided. The district court holds to a sequence of events that Mr. Wells disputes, and the evidentiary record will bear out. The district court held that Armstrong's initial investigation and seizure of Mr. Wells was reasonable, and, therefore, Fuentes, and the other officers, were justified in continuing that initial investigation – but Armstrong claims he conducted no investigation. Such dispute, alone, should permit this case to proceed. Fed. Appellees' Br. at 3-5; JA97-JA99; JA107-JA108.

Furthermore, the Supreme Court of Virginia provided an outline of what the state of the law was in Virginia in 2020; fundamentally, it was clear and well established that Armstrong, Fuentes, and the ACPD officers were not permitted to do what they did on February 9, 2020. *Cromartie v. Billings*, 298 Va. 284, 298 (2020). Notably, *Cromartie* refers to the 2009 Supreme Court of the United States' opinion in *Gant*, the well-known standard that officers may not conduct a "vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Cromartie v. Billings*, 298 Va. 284, 298, 837 S.E.2d 247, 254 (2020) (quoting *Arizona v. Gant*, 556 U.S. 332, 335 (2009)).

The reasonable officer would have understood, immediately, that the items searched and seized were facially irrelevant to the citations related to Mr. Wells

not being able to show his Virginia license[5] and for the expired temporary tag on his car. Mr. Wells' equipment in his car, firearms, tools, notes, and miscellaneous and sundry were not evidence of any crime suspected nor the citations issued on February 9, 2020. At best, Fuentes was permitted to issue the citations to Mr. Wells. The subsequent conduct was all violative of Mr. Wells' rights. The Appellees' disagree with the pleadings in the Second Amended Complaint; that does not support a dismissal of Mr. Wells' claims, rather, the factual allegations should have been resolved in Mr. Wells' favor and permitted to go to a jury to determine if the officers were reasonable.

The officers argue they are permitted to rely on the instructions, information, and findings of other officers; however, the case law cited almost invariably involve emergency circumstances. Mr. Wells was cooperative and jovial, to a fault; Armstrong argues he conducted no investigation – thus, Fuentes' arguments that he could rely on Armstrong's investigation is, at best, a factual dispute that errs in favor of reversing the dismissal and remanding this case so that the dispute between Armstrong and Fuentes can be resolved by a full evidentiary record.

---

[5] As has been previously indicated, an officer, suspected to be Armstrong, found Mr. Wells' Texas license; the point being, Mr. Wells was able to show an issued government identification.

The argument that the officers conducted a valid inventory of the vehicle pending the towing is belied by the fact that the search and seizure started long before it was known that Mr. Wells was unable to find an individual to pick him and his belongings up, and before it was known that the vehicle had to be towed. The argument of Fuentes, and the other ACPD Officers, fails to address the facts that are made clear by the recording – when the officer who was recording, believed to be Soules, showed up on scene at about 4:13 PM, the searches and seizures were already started; it was not until approximately 5:20 PM that Mr. Wells was unable to find a friend to pick him up. DMV at 4:13 PM to 5:20 PM. The towing company, Redman's Towing, was contacted at 4:43 PM; however, Vanak's Photo Identifier provided in response to a FOIA request indicated the removal of Mr. Wells' property began at 4:35 PM.[6]



---

[6] Further corroborated by Mr. Wells' observation that they were removing his property from his car. DMV at 4:38:20. Also, sounds of metallic objects being dropped on the ground as they were removed from Mr. Wells' car can be heard at 4:43:30.

The Appellees' argument that the inventory search was conducted in good faith on the belief that the car was being towed directly contrasts with the facts made evident by the recording and the officers' own notes.

There has been no evidence and no argument, that Mr. Wells was suspected of any crime and, therefore, the investigation should have immediately ended, and Mr. Wells permitted to leave with a citation. Fuentes cited to the *Muehler* case to argue that keeping Mr. Wells in handcuffs, seizing him, and searching his vehicle were reasonable because, in that case, Mena, and others, were detained for hours. *Muehler v. Mena*, 544 U.S. 93, 95, 125 S. Ct. 1465, 1468 (2005). Most importantly, the difference between the detention of Mena and the detention of Mr. Wells was that Mena was handcuffed during an investigation of a gang-related, drive by shooting, in a home, and a warrant had issued for said search. Mr. Wells was minding his own business, not threatening anyone, no warrant or probable cause, no reasonable suspicion, with no prior criminal history of violence, no call of any violent or felonious conduct, and there existed no allegation he was suspected of any crime on February 9, 2020.

Like *Cromartie* and *Nazario*, even if the Appellees may argue a portion of the stop was justified, an otherwise justifiable stop can turn a civil rights violation by subsequent conduct of the officers. *See Cromartie v. Billings*, 298 Va. 284

(2020) and *Nazario v. Gutierrez*, Civil Action No. 2:21CV169 (RCY), 2022 U.S. Dist. LEXIS 142044, at *2 (E.D. Va. Aug. 9, 2022).

## III.   ACPD OFFICERS.

Injecting additional confusion and error, ACPD Officers now say Mr. Wells' vehicle was parked on a street in Arlington County.  As can be seen in the photographs taken by the ACPD Officers on February 9, 2020, Mr. Wells was not parked on the street, he was pulled into a parking lot off the side of an out-of-the-way cut into Southgate road.  JA11.  His vehicle presented no impedance to the regular flow of traffic and there existed no prohibition on his vehicle staying in that nearly empty parking lot.  As can be seen throughout the February 9, 2020, recording, even with police vehicles surrounding Mr. Wells' vehicle, the one-way traffic was still able to proceed.  *See generally*, DMV.

Each of the ACPD[7] arguments fail to rise to the moment to support the district court's dismissal of Mr. Well's Second Amended Complaint.  In the current posture, upon Fed. R. Civ. P. 12(b)(6) Motions to Dismiss, the district court should have resolved the factual disputes in Mr. Wells' favor, however, it resolved multiple disputes in the movants' favor and invented consent in the complete absence thereof.  Ultimately, the district court, at most, should have permitted Mr.

---

[7] Appellees Kline, Lugasi, Soules, and Vanak.

Wells' action to proceed to discovery to permit a fuller record to determine these issues on summary judgment or by a jury; instead, the ACPD Defendants demonstrated substantially unreasonable conduct, believing that Mr. Wells could make himself invulnerable to bullets, handcuffed him, held him on a February evening on a curb, with snot dripping down his face, and now argue he consented to their total infringement of his Second and Fourth Amendment rights.

## A. Qualified Immunity is an Objective Standard.

Relying on the officers' subjective beliefs, the ACPD Officers allege that, because they had a reasonable belief they had to tow the vehicle, they were then permitted to search and seize Mr. Wells' property. Their conduct failed to meet the standard of the inventory search exception and the district court admits as much by finding their conduct only *substantially* met with policy. Officers are obligated to comport with policy when conducting inventory searches; mere substantial compliance offends the Fourth Amendment; such bar lowering further erodes the Fourth Amendment's protections.

By default, all searches without a warrant or consent are unreasonable. *See South Dakota v. Opperman*, 428 U.S. 364, 369, 381 (1976). The three valid purposes that give rise to the inventory search exception come from (1) the need to protect the car owner's property within the vehicle while in the police impound lot, (2) to protect against claims of theft or damage against the

police by the owner, and (3) to protect police from potential danger, such as bombs in the car. *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Furthermore, the inventory-search exception only applies if it is conducted according to uniform police department policy and in good faith. *United States v. Brown*, 787 F. 2d 929 (4th Cir. 1986), *see also*, *Colorado v. Bertine*, 479 U.S. 367 (1987).

ACPD Officers handwave the clear allegation that their taking of Mr. Wells' property was merely a pretextual rummaging; evidence can be see of this fact by the two-faced nature of their conversations with Mr. Wells. While within earshot of Mr. Wells, they pretended they would let him take his property – when out of earshot, one officer represented the sentiment of the officers, called Mr. Wells a "fucking bullshitter"[8] and stated they were certain they were going to take all of his property – the other officer in the conversation did not demur. The conclusion that this taking was a mere pretextual rummaging is further supported by the fact that Wanek, the next day, continued the rummaging, crossed out "safekeeping" on the form, and wrote in "evidence" without consent, or a Fourth Amendment exception. JA69-JA70. The district court concluded that because the officers lawfully took the property on February 9, 2020, Wanek was permitted to rummage through it

---

[8] DMV at 5:15 PM.

11

further on February 10, 2020 – effectively striking the Fourth Amendment from the Constitution.

The impact of this end-run around the Fourth Amendment cannot be overstated. Instead of seizure of property being an extremely rare circumstance, the district court's Order sets up a circumstance wherein police, for one of thousands of reasons, might need to tow a vehicle. Because that circumstance exists, each scrap of property therein may be confiscated under the pretext of "Safekeeping," departmental policy of itemizing and notifying the owner of what was taken can be ignored by the officers, and later, a detective can convert such property to evidence. This is precisely the step-by-step erosion of the Fourth Amendment that this Court must adamantly stop.

**B. Objective Unreasonableness.**

The ACPD Appellees' Brief fails to correctly apprehend the import of the "List." In short, one of the officers on February 9, 2020, concluded that Mr. Wells was in possession of a "handwritten list of chemical compounds that have potential to make the human body bulletproof or invincible." JA28. Missing the point, Appellees argue that the Fourth Amendment is not violated by their taking such List. Mr. Wells has never argued as such. The import of directing the Court's attention to this phantasmal "List" and how the officers, both on February 9, 2020, and thereafter, utilized the list demonstrates the facial irrationality,

unreasonableness, and bad faith that the officers demonstrated throughout their interactions with Mr. Wells.

Plainly stated: No such List existed.

Every scrap of meaningless paper was scrutinized in a hyper irrational way, every opportunity the officers had to misrepresent what they found in Mr. Wells' vehicle was met with the most outlandish twisting in order to make it sound like Mr. Wells was something he was not. Joviality has been turned into evidence and the district court, despite reciting it in its factual findings, failed to apply the merit of these facts. When viewed from an objective standard, their efforts on February 9, 2020, and thereafter, in utilizing this List, as evidence, and on subsequent warrant applications and, likely, in discussions with the Commonwealth's Attorneys and magistrate, was objectively unreasonable conduct demonstrating a violation of the Fourth Amendment.

Quoting Mr. Wells' joviality, Appellees attempt to show some sort of basis of the officers' subjective interpretation of the notes. They omit Mr. Wells' explicit statement that he had no idea what they were talking about and he wanted to see what they were talking about, which the officers did not show him[9] and just made up their own irrational conclusions absent his input. Mr. Wells explicitly

---

[9] DMV at 4:59:40 PM.

said, "can I see it?" *Id*. The male officer recites his faulty recollection of what he read; to which, Mr. Wells responded, with an incredulous "Really?!" *Id*. Ultimately, no one showed it to Mr. Wells and fabricated an unreasonable report.

Such objectively unreasonable conduct continued: Mr. Wells explained he was involved in real estate sales, had a list of addresses, and the officers consider the list a list of possible places he may hit without any basis. Mr. Wells explained that his parents sent him a bunch of his property which he dumped into his trunk, and the officers examine everything as if it were stolen. The officers relate that Mr. Wells had some sort of "manifesto" which the media reported on – not one officer could point to any document that was any form of a "manifesto," because it did not exist.

Notably, every item confiscated was lawfully possessed and not one handwritten note indicated any unlawful action. The Appellees argue that Mr. Wells could not have been in lawful possession of the Rifle Plate – but that presupposes that Mr. Wells was aware of complex regulations that even the officers testifying to the court got wrong. Notably, manufacturers of military equipment regularly sell such equipment to the civilian public and nearly identical

examples of the Rifle Plate in question can be found on Armslist and Ebay, among other resellers of military equipment.  JA25.[10]





---

[10] Images included to show the civilian market contains many examples of Ceredyne-made items identical to the Rifle Plate, as alleged in SAC ¶ 84.

### C. ACPD Officers violation of the Second Amendment.

Attempting to utilize Uber's prohibition on carrying firearms in their vehicles, the Appellees' argue that they did not violate the Second Amendment because they were "concerned." ACPD Appellees' Brief at 28. The right to keep and bear a firearm in an open carry posture was clearly the law of Virginia in February 2020. *See Commonwealth v. Hill*, No. : CR17-1853, 2018 Va. Cir. LEXIS 111, at *21 (Cir. Ct. June 22, 2018) and *Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 131, 704 S.E.2d 365, 367 (2011) (observing the default legality of open carrying a firearm in Virginia).

Appellant's Brief refers to the familiar opinions in *Heller* and *Bruen* showing that the default condition of open carry has long been unrestricted and the reasonable officer would know, in Virginia, open carrying a firearm is permitted. Officer Fuentes even admitted he knew Mr. Wells was permitted to open carry his firearms. JA165.

The Appellees' Brief indicates that *Kolbe v. Hogan* was the controlling law on February 9, 2020, on whether an individual has a right to open carry a firearm. 849 F.3d 114 (4th Cir. 2017). *Kolbe*, however, does not discuss open carrying, and Appellees concede as much by stating that the holding did not protect an individual's possession of a particular firearm – a matter that is irrelevant to the instant case.

In February 2020, the law of Virginia, as observed and not objected to in *Hill*, and *Digiacinto*, cited *supra*, was that carrying firearms concealed without a license was prohibited[11] and that which is not specifically prohibited, is permitted. A reasonable officer on February 9, 2020, such as Fuentes testified, would have known open carry was clearly the law of Virginia.

The argument from the Appellees on the Second Amendment contains numerous nonstarters, such as discussions of the non-existent "AR-15 Machine Gun." The district court fundamentally found consent where none existed and where Mr. Wells was expressly asserting he did not consent and that he wanted to open carry his firearms. Giving in to the officers while handcuffed, sitting on a curb, with snot dripping off his face does not evidence consent; it evidences a facial violation of Mr. Wells' rights – failing to fight the officers should not be the standard of when a detainee consents to police misconduct.

## IV.  WANEK KNOWINGLY LIED, MISREPRESENTED, AND WITHHELD EVIDENCE.

A grand jury returning a true bill, the Commonwealth's Attorney's choice to prosecute, or a magistrate's finding of probable cause do not create a superseding, intervening cause if Detective Wanek lied, misrepresented the evidence, or

---

[11] In effect as of July 1, 2018:  Va. Code § 18.2-308 ("If any person carries about his person, hidden from common observation, (i) any pistol … he is guilty of a Class 1 misdemeanor").

withheld evidence. The objective evidence demonstrates that Wanek, at a minimum, continued the lies that he told to Mr. Wells, when he presented the case to the magistrate.

### A. Wanek and Shepherd Made Knowing Misrepresentations.

It is unclear why, but Wanek's Brief makes citation to Appellant's Brief at Page 46 to assert that Mr. Wells has conceded that Wanek did not violate the Fourth Amendment. Mr. Wells did not so concede; Wanek's conversion of property taken according to a pretextual rummaging from Safekeeping to Evidence requires either independent probable cause or exception to the Fourth Amendment.

Wanek proceeded to argue that he relied upon the good faith actions of fellow law enforcement officers – it is implicit in that argument that Wanek is attempting to say, *both* that the February 9, 2020, officers took Mr. Wells' property as evidence of some unstated crime, *and*, that it was taken only as safekeeping in good faith. He cannot have it both ways. If there were real good faith, there would be no need to withhold evidence from the Commonwealth's Attorney and court.

Finally, Wanek argues that his false statements regarding the value of the Rifle Plate could not have resulted in the malicious prosecution of Mr. Wells because it would still be a crime, but just not a felony; however, Wanek fails to attack the main thrust of the argument. The primary import is that Wanek and Shepherd knew they had no evidence of any crime Mr. Wells committed and

demonstrated through later statements to the court, regarding the value and location of the Rifle Plate. For example, without any reasonable basis, demonstrating a want of probable cause, by relying only on speculation and assumption that the Rifle Plate could have possibly been in the same place at the same time giving Mr. Wells the opportunity to have stolen it, Shepherd and Wanek coordinated to maliciously prosecute Mr. Wells.

### B. Wanek Cannot Rely on the General District Court's Determination of Probable Cause.

Wanek's conduct precludes his argument that the finding of probable cause by others is a superseding, intervening cause of Mr. Wells' harms. JA24-JA34. Most notably, Mr. Wells' former roommate, Dotson, spoke with Wanek before Wanek obtained the warrant to arrest Mr. Wells. Dotson's testimony is expected to accord with what he stated to the Commonwealth's Attorney, that Dotson was not missing a Rifle Plate. JA305. Furthermore, it is expected Dotson will testify that he said the same to Wanek, prior to the issuance of the arrest warrant. Additionally, Mr. Wells would not have been incarcerated if Wanek correctly identified the value of the Rifle Plate as being less than $500.00. Wanek was aware, as early as February 10, 2020, that the Rifle Plate had practically no value or, at most, $471.38. JA307. It is a reasonable inference from the sequence of events that Wanek did not give this exculpatory information to the magistrate, Commonwealth's Attorney's office, or the grand jury.

Furthermore, also as early as February 10, 2020, Wanek was aware that rifle plates such as the Rifle Plate in question typically were removed from service when unserviceable or around 5 years after placed in service. The particular Rifle Plate in question was unserviceable as can be seen by the photographs included in the Second Amended Complaint. JA31-JA33. Furthermore, Wanek testified that he worked with Shepherd; Shepherd informed Wanek that the Rifle Plate would likely have left the service before Mr. Wells entered the service. It is a reasonable inference that this information, also, was withheld from the magistrate, the commonwealth's attorney, and the grand jury.

Mr. Wells explained to Wanek the reasonable explanation that he bought the Rifle Plate, and other equipment, to partake in games of airsoft, a particularly common practice. DKT 78 Exhibit 8.

## V. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED ON THE STATE-LAW CLAIMS.

The ACPD Appellees' claim that Appellant's Brief fails to address the state claims of false imprisonment and malicious prosecution. Such assertion is false. In its Statement of the Issues, Appellant's Brief raises error as to the state-law

claims in numbered paragraphs 5,[12] 6, 7,[13] 8, 9, 10, and 11.  Appellant's Br. at 8-10.  Specifically turning to the Argument, Appellant's Brief discusses the district court's errors in its opinion as it applied to the state-law claims against the ACPD Appellees in Sections I.B.2 through I.B.4.  Appellant's Br. at 30-42.  Appellant's Brief tracked the structure of the district court's findings, which primarily turned on its finding that qualified immunity protected the officers on all counts.  The district court's error in dismissing the state-law claims of violations of Va. Code § 19.2-59, the holding of *Cromartie v. Billings*, 298 Va. 284 (2020), false imprisonment, and malicious prosecution is clearly raised in Appellant's Brief.

The ACPD Appellees' Brief claims that they detained Mr. Wells for a brief period of time and were legally justified; however, they fail to explain how their conduct was justified.  Appellees argue that Mr. Wells was "heavily armed" – a continuation of the ***you're guilty because I'm scared*** fallacy that was cleverly utilized when Wanek testified, falsely, that Mr. Wells had armor-piercing ammunition.  Mr. Wells had green-tipped ammunition which is not armor piercing.  18 U.S.C. 921(a)(17)(B).  Wanek testified as to matters which he knew were false,

---

[12] The correct construction of Armstrong's Community Caretaker invocation implicates whether the ACPD officers may rely on Armstrong's disputed pseudo-investigation.

[13] Including Count V of the Second Amended Complaint, alleging violation of Va. Code § 19.2-59 and the *Cromartie* standard.

misrepresented the facts he did know, and incompetently testified about matters as if he were competent, such as the ammunition issue; the result of Wanek's testimony, and the testimony and work of the other officers, was the court finding probable cause, denying bond, determining Mr. Wells was a danger to the community, and, ultimately, the magistrate issued warrants, the commonwealth's attorney decided to prosecute, and the grand jury returned a true bill.

Wanek's false testimony clearly scared the judge, as he intended.   JA386, JA432.

- The possession of scary equipment is not evidence of a crime.

- The possession of meaningless handwritten notes is not evidence of a crime.

- The possession of body armor is not evidence of a crime.

- The possession of guns is not evidence of a crime.

- The possession of quadrotor drones is not evidence of a crime.

- The possession of laptops is not evidence of a crime.

- The possession of tools is not evidence of a crime.

- The possession of a toy smoke device for airsoft is not evidence of a crime.

- The possession of airsoft masks is not evidence of a crime.

- Training to work in the force protection industry is not evidence of a crime.

Mr. Wells lived in an apartment and did not have a lot of storage space.  He left some equipment in his car and had a messy car filled with items sent to him by

his parents. Officers, acting in an objectively reasonable manner, would not have detained Mr. Wells, would not have found there was reasonable suspicion to search and seize Mr. Wells and his vehicle as they did on February 9, 2020, and would have properly executed an inventory search in accordance with policy and procedure.[14]

Finally, ACPD Appellees' argue that Mr. Wells' claim in Count IV, Malicious Prosecution against Wanek, Fuentes, Lugasi, and Soules, failed because he was convicted on Va. Code §§ 46.2-104 and 612, driving without his license and expired temporary tag, respectively. The argument is a nonstarter. First, Mr. Wells was in custody when those charges came to trial and the Commonwealth failed to produce him. Second, the primary malicious prosecution that caused Mr. Wells' harms was the malicious prosecution regarding the Rifle Plate arising from the events of February 9, 2020. Third, the testimony and work of Wanek, Fuentes, Lugasi, and Soules each substantially caused the Rifle Plate prosecution which was terminated in a manner favorable to Mr. Wells; all charges were dropped after the motion to suppress was granted. JA27 (SAC ¶ 95).

_____

[14] Notably, the officers failed to have Mr. Wells sign the impound form, failed to provide him a copy of the form, failed to document which items were taken for "Safekeeping," failed to give Mr. Wells a list of which items were so taken, failed to take all items, a necessary precondition for the inventory exception to apply, and failed to take custody of the vehicle prior to the inventory (the vehicle was towed to Mr. Wells' apartment, not a lot). JA22-JA23.

As argued in Section IV.B, *supra*, Wanek cannot rely upon findings of probable cause by the magistrate, court, or commonwealth's attorney because they were all based upon Wanek's false statements, withheld information, and misleading testimony.

## CONCLUSION

For the foregoing reasons, and in the interests of substantial justice, the district court's June 2, 2023, Order should be reversed, and Wells' case remanded for further proceedings.

Respectfully submitted,

*/s/ Matthew A. Crist*
Matthew A. Crist, Esq.
Matthew A. Crist, PLLC
10432 Balls Ford Rd., Suite 300
Manassas, VA 20109
571-551-6859
mcrist@macpllc.net
***Co-counsel for Appellant***

## RULE 32 CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 5,303 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements to Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced Times New Roman font size 14.

Dated: October 30, 2023

/s/ Matthew A. Crist
Matthew Crist
*Co-counsel for Appellant*


## CERTIFICATE OF SERVICE

I hereby certify that on this date, January 5, 2024, the foregoing document was served on all parties through the CM/ECF system.

/s/ Matthew A. Crist
Matthew Crist
*Co-counsel for Appellant*